# UNITED STATES v. ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 504.   Argued February 28, 1911.—Decided March 13, 1911.

In determining whether an office is one continuously operated, a trifling interruption will not be considered; and *quære*, whether a railway station shut for two periods of three hours each day and open the rest of the time is not a station continuously operated night and day within the meaning of §§ 2 and 3 of the act of March 4, 1907, c. 2939, 34 Stat. 1415.

Under §§ 2 and 3 of the act of March 4, 1907, c. 2939, 34 Stat. 1415, a telegraph operator employed for six hours and then, after an interval, for three hours, is not employed for a longer period than nine consecutive hours.

The presence of a provision in one part of a statute and its absence in another is an argument against reading it as implied where omitted; and so *held* that the word "consecutive" is not to be implied in connection with limiting the number of hours during the twenty-four that telegraph operators can be employed under the act of March 4, 1907.

177 Fed. Rep. 114, affirmed.

THE facts, which involve the construction of the act of March 4, 1907, regulating the hours of service of railway employés, are stated in the opinion.

*Mr. Wm. S. Kenyon,* Assistant to the Attorney General, with whom *The Attorney General* and *Mr. Philip J. Doherty,* Special Assistant United States Attorney, were on the brief, for the United States:

The telegraph office at Corwith was "continuously operated night and day" within the meaning of the statute. *Wood* v. *Sutcliffe,* 8 Eng. L. & Eq. 217, 220; *Garrison* v.

*United Railways Co.*, 91 Maryland, 347. Such was the intent of Congress.

The distinction was between offices "operated only during the daytime" on the one hand and those operated "night and day" on the other hand. No distinction was attempted or intended between offices operated without interruption all day and all night, and such as were operated practically all day and all night, but not without interruption for one or another reason. Congress intended by the proviso to legislate concerning all offices, towers, etc.

In using the language in question Congress was merely classifying offices into two general classes and was not attempting exact definitions of either class; too much significance should not be given to a single word, but the general purpose of Congress should be carried out by construction.

The word "continuously" may be read in the sense of "regularly" or "habitually" or "customarily." *Hodge* v. *U. S. Steel Corporations*, 64 N. J. Eq. 807.

There is nothing in the statute which says that the operations must continue all day and all night.

As to the meaning of the expression "on duty for a longer period than nine hours in any twenty-four hour period," the purpose of the act is to secure rest for the employé in order that he may be able better to do his work with more safety to the public. Such rest should be a continuous rest, not intermittent, as would be possible under the construction contended for by defendants.

The Government contends that the term "on duty for a longer period than nine hours in any twenty-four hour period" is plain, and that the word period must be given some significance; that the period commences when the operator goes to work and continues nine hours therefrom. The word "period" cannot be construed as an unmeaning and useless word in this statute; it carries

with it the idea of a cycle, a term. A man works for a period of time. That may not mean that he works every hour of the time; that he cannot stop for lunch or sleep; but whether he stops or whether he works, the period goes on. *Sampson* v. *Peaslee*, 20 How. 571; 22 Am. & Eng. Ency. Law, 678; see definition in Webster and Standard Dictionary and Crabb's English Synonyms, p. 799; *People* v. *Lesk*, 67 N. Y. 521, 528; *State* v. *Strauss*, 49 Maryland, 288; *Re Becker*, 80 N. Y. Supp. 1115; Sutherland on Stat. Const., 2d ed., § 369.

The railroad's practice of splitting tricks breaks into the consecutive hours of rest which it was the intention of Congress that operators should have. Even if this is a penal statute, the forced and technical construction contended for by respondent should not be given. *Northern Securities Co.* v. *United States*, 193 U. S. 357; *United States* v. *Wiltberger*, 5 Wheat. 76; *United States* v. *Morris*, 14 Pet. 464; *People* v. *Bartow*, 6 Cowan, 290.

The mischief sought to be remedied is the splitting of tricks and the long hours of service. The remedy is continuous hours of rest. Hence, a period of nine hours of duty and no more in any twenty-four hour period. See *Heyden's Case*, 3 Coke, 7; Endlich on Interp. Stat., § 103; Potter's Dwarris, Stat. Constr., 194.

The act is remedial: When statutes are primarily remedial and the penal provisions are merely incidental to its enforcement, they are to be construed, if not liberally, at least so as to accomplish the congressional purpose. *Johnson* v. *So. Pac. R. R. Co.*, 196 U. S. 1, 17; *Schlemmer* v. *B. R. & C. Ry. Co.*, 205 U. S. 1, 10; *N. Y., N. H. & H. R. R. Co.* v. *Inter. Comm. Comm.*, 200 U. S. 361, 391.

As to history and phraseology of the proviso with reference to telegraph operator, see Sen. Bill 5133, 59 Cong.; 41 Cong. Rec., pt. 1, p. 893; H. R. Rept. No. 7641, 59th Cong., 2d sess., p. 1; 41 Cong. Rec., pt. 4, pp. 3235, 3756,

3761; pt. 5, p. 4342; 41 Cong. Rec., pt. 5, p. 4597; pt. 5, pp. 4621, 4636 and 4637; pp. 4597, 4621, 4599; pt. 5, pp. 4637, 4663.

The law does not unwarrantably interfere with the right of contract guaranteed by the Constitution. *Holden* v. *Hardy,* 169 U. S. 366; see *Muller* v. *Oregon,* 208 U. S. 412; *Atlantic Coast Line* v. *Riverside Mills,* 219 U. S. 186. The law is a fair, reasonable and appropriate exercise of the powers of Congress.

*Mr. Robert Dunlap,* with whom *Mr. Gardiner Lathrop* was on the brief, for respondent:

The office in which the operators in question worked was not" one "continuously operated night and day" within the purview of the statute and, therefore, such operators were not confined to nine hours' work. Their case fell rather under the general sixteen-hour provision.

Supplying the words which are necessarily omitted for the sake of brevity, the phrase would read, "offices, etc., which are continuously operated during the night and daytime." See *State* v. *Vanderbilt,* 37 Ohio St. 598; *Black* v. *D. & H. Canal Co.,* 22 N. J. Eq. 402; *Garrison* v. *United Railways Co.,* 91 Maryland, 347; *People* v. *Sullivan,* 9 Utah, 195; *Hodge* v. *Steel Corporation,* 64 N. J. Eq. 807. *El Paso* v. *Bank,* 71 S. W. Rep. 799, distinguished, and see *Rasmussen* v. *People,* 155 Illinois, 70; *Toberg* v. *Chicago,* 164 Illinois, 752; *Casey* v. *People,* 165 Illinois, 49; *Washington* v. *Bassett,* 15 R. I. 563.

Provisos or exceptions are strictly construed in taking cases out of general provisions. *United States* v. *Dickson,* 15 Pet. 158; *Savings Bank* v. *United States,* 19 Wall. 228.

Courts cannot suppose omissions were not intentional, and undertake to supply the same. *United States* v. *C. & N. W. Ry. Co.,* 157 Fed. Rep. 321; *State* v. *C., C., C. & St. L. Ry. Co.,* 157 Indiana, 288; *S. C.,* 61 N. E. Rep. 669, 670; *Re Herring,* 117 N. Y. Supp. 747; Sutherland, Stat.

Const., § 328. Penal statutes should be strictly construed. *Robinson* v. *Harmon*, 157 Michigan, 266, 278; *People* v. *Weinstock*, 193 N. Y. 481; *Nance* v. *Southern Railway*, 149 N. Car. 116; *United States* v. *Harris*, 177 U. S. 305, 309; *Bolles* v. *Outing Company*, 175 U. S. 265; *Lau Ow Bew* v. *United States*, 144 U. S. 59; *Chicago N. W. Ry. Co.* v. *Dey*, 35 Fed. Rep. 876; *Tozer* v. *United States*, 52 Fed. Rep. 917.

Penalties are not to be extended by construction. *A., T. & S. F. Ry. Co.* v. *People*, 227 Illinois, 270, 278; *State* v. *C., C., C. & St. L. Ry. Co.*, 157 Indiana, 288. The court cannot supply supposed omissions in the proviso. *Hobbs* v. *McLean*, 117 U. S. 579; *United States* v. *I. C. R. R. Co.*, 170 Fed. Rep. 549; *D., L. & W. R. R. Co.* v. *Inter. Comm. Comm.*, 166 Fed. Rep. 498; *S. C.*, 216 U. S. 531; *Konda* v. *United States*, 166 Fed. Rep. 91.

But if the nine-hour provision were applicable yet defendant would not be liable, since it did not permit operators at this office to be on duty longer than nine hours in any twenty-four hour period and the law does not forbid a splitting of the time or adjustment of the hours of service.

The manifest purpose of the law was to fix the number of hours of labor required and not the period within which by agreement the given number of hours of labor should be performed, beyond the limit prescribed of "any twenty-four hour period."

As to the word "period" in congressional legislation, see chap. 3594, 34 Stat. 607; H. R. Rep. 7641, 59th Cong., 2d Sess., on "Limiting the Hours of Service of Railroad Employés."

For Congress to undertake to say that the hours of work could only be consecutive and may not by agreement of the parties be distributed within the period of a day, would exceed the limit of police power and seriously impinge upon the liberty of contract. *Lochner* v. *New*

*York,* 198 U. S. 45; *Allgeyer* v. *Louisiana,* 165 U. S. 578; *Adair* v. *United States,* 208 U. S. 161; 22 Op. Atty. Gen. 62; *United States* v. *Langston,* 85 Fed. Rep. 613; *United States* v. *McCrory,* 119 Fed. Rep. 862.

As to the purpose of the law as manifested by Committee Reports during its passage, see Report No. 7,641, *supra;* Reports of Inter. Comm. Comm. for 1904, 1905; Resolution of Brotherhood of Railroad Trainmen, cited in report.

It is plain that Congress was considering the question of the number of hours of labor which should be fixed and was seeking to prohibit employés from working an excessive number of hours a day.

A sensible construction should be adopted and one not leading to any unreasonable or absurd consequences. *East* v. *Brooklyn R. Co.,* 195 N. Y. 409; *In re the Opinion of Justices,* 72 Atl. Rep. 754; *Market Co.* v. *Hoffman,* 101 U. S. 116; *United States* v. *Kirby,* 7 Wall. 486; *Darlington Lumber Co.* v. *Mo. Pac. Ry. Co.,* 216 Missouri, 658; *Thompson* v. *State,* 20 Alabama, 62.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action to recover penalties for violation of the 'Act to promote the safety of employés and travellers upon railroads by limiting the hours of service of employés thereon.' March 4, 1907, c. 2939, §§ 2, 3, 34 Stat. 1415, 1416. The Government had a verdict in the District Court, subject to exceptions, and the judgment was reversed by the Circuit Court of Appeals. 177 Fed. Rep. 114. 100 C. C. A. 534.

The case is this: By § 2 it is made unlawful for common carriers subject to the act to permit any employé subject to the act to be on duty 'for a longer period than sixteen consecutive hours,' or after that period to go on duty again until he has had at least ten consecutive hours off

duty, or eight hours after sixteen hours' work in the aggregate: Provided that no telegraph operator and the like shall be permitted to be "on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places and stations operated only during the day time," with immaterial exceptions. By § 3 there is a penalty of not exceeding five hundred dollars for each violation of § 2. The defendant was subject to the act. It had a station and telegraph office at Corwith, in the outer limits of Chicago, which was shut from twelve to three by day and by night, but open the rest of the time. The Government contends that this was a place "continuously operated night and day." At this station the same telegraph operator was employed from half past six o'clock in the morning until twelve and again from three P. M. to half past six, or nine hours, in all, of actual work. The Government contends that when nine hours have passed from the moment of beginning work the statute allows no more labor within twenty-four hours from the same time, even though the nine hours have not all of them been spent in work. According to the Government's argument the operator's nine hours expired at half past three in the afternoon. These questions on the construction of the statute are the only ones that we have to decide.

We are of opinion that the Government's argument cannot be sustained, even if it be conceded that Corwith was a place continuously operated night and day, as there are strong reasons for admitting. The antithesis is between places continuously operated night and day and places operated only during the daytime. We think that the Government is right in saying that the proviso is meant to deal with all offices, and if so, we should go farther than otherwise we might in holding offices not

operated only during the daytime as falling under the
other head. A trifling interruption would not be consid-
ered, and it is possible that even three hours by night and
three hours by day would not exclude the office from all
operation of the law, and to that extent defeat what we
believe was its intent.

But if we concede the Government's first proposition
it is impossible to extract the requirement of fifteen hours'
continuous leisure from the words of the statute by
grammatical construction alone. The proviso does not
say nine 'consecutive' hours, as was said in the earlier
part of the section, and if it had said so, or even 'for a
longer period than a period of nine consecutive hours,'
still the defendant's conduct would not have contravened
the literal meaning of the words. A man employed for six
hours and then, after an interval, for three, in the same
twenty-four, is not employed for a longer period than nine
consecutive hours. Indeed, the word consecutive was
struck out, when the bill was under discussion, on the
suggestion that otherwise a man might be worked for a
second nine hours after an interval of half an hour. In
order to bring about the effect contended for it would have
been necessary to add, as the section does add in the earlier
part, a provision for the required number of consecutive
hours off duty. The presence of such a provision in the
one part and its absence in the other is an argument
against reading it as implied. The Government suggests
that if it is not implied a man might be set to work for two
hours on and two hours off alternately. This hardly is a
practical suggestion. We see no reason to suppose that
Congress meant more than it said. On the contrary, the
reason for striking out the word consecutive in the proviso
given, as we have mentioned, when the bill was under dis-
cussion, and the alternative reference in § 2 to 'sixteen
consecutive hours' and 'sixteen hours in the aggregate,'
show that the obvious possibility of two periods of service

in the same twenty-four hours was before the mind of Congress, and that there was no oversight in the choice of words.

*Judgment of Circuit Court of Appeals affirmed.*