SOUTHERN PAC. CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 23, 1915.)

No. 2463.

1. TRIAL ☞177—MOTION FOR DIRECTED VERDICT BY BOTH PARTIES—EFFECT.

The rule that a motion by each party for a directed verdict in his favor is equivalent to a request for findings of fact by the court, and that, if the court directs a verdict for one party, both parties are concluded on the findings of fact, was not applicable, where defendant's motion was accompanied by a request for leave to go to the jury if the motion was denied.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 400; Dec. Dig. ☞177.]

2. TRIAL ☞139—DIRECTED VERDICT—WHEN WARRANTED.

The validity of a peremptory instruction for plaintiff depends upon whether the evidence was so undisputed, or was of such a conclusive character as would have made it the duty of the court to set aside a verdict for defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. ☞139.]

3. MASTER AND SERVANT ☞13—HOURS OF SERVICE—RELEASE FROM DUTY.

Under Act March 4, 1907, c. 2939, 34 Stat. 1415 (Comp. St. 1913, § 8677–8680), providing that it shall be unlawful for any common carrier subject to that act to permit any employé subject thereto to remain on duty for longer than 16 consecutive hours, that whenever any such employé shall have been continuously on duty for 16 hours, he shall be relieved, and not permitted to again go on duty until he has had at least 10 consecutive hours off duty, and that no such employé who has been on duty 16 hours in the aggregate in any 24-hour period shall be permitted to continue or again go on duty without having had at least 8 consecutive hours off duty, where a train is delayed en route to its destination, and the members of the train crew are laid off and released from duty during the period of the delay, the lay-off or release breaks the continuity of the service, and the period of such lay-off should be deducted in de-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

termining whether there has been a violation of the act, if the release is for a substantial and opportune period of rest.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ☜13.

Hours of service of employés, see note to United States v. Houston Belt & T. Ry. Co., 125 C. C. A. 485.]

4. MASTER AND SERVANT ☜17—HOURS OF SERVICE—QUESTIONS FOR JURY.

In an action for penalties for permitting a train crew to remain on duty for more than 16 consecutive hours, evidence *held* to make a question for the jury as to whether releases of the train crew from duty while the train was delayed were for substantial and opportune periods of rest, and hence the court erred in directing a verdict for the government.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 16; Dec. Dig. ☜17.]

In Error to the District Court of the United States for the District of Arizona; William H. Sawtelle, Judge.

Action at law by the United States against the Southern Pacific Company to recover penalties for alleged violations of the act of Congress entitled "An act to promote the safety of employés and travelers upon railroads by limiting the hours of service of employés thereon," approved March 4, 1907. Reversed.

Francis M. Hartman, of Tucson, Ariz., and Charles J. Heggerty and Knight & Heggerty, all of San Francisco, Cal., for plaintiff in error.

Thomas A. Flynn, U. S. Atty., of Phoenix, Ariz., and Philip J. Doherty, Sp. Asst. U. S. Atty., of Washington, D. C.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. The complaint filed in this case contains 12 counts. The first 6 only are involved in the present controversy. It is charged in the complaint that the defendant is a common carrier; that in violation of the act of Congress, entitled "An act to promote the safety of employés and travelers upon railroads by limiting the hours of service of employés thereon," approved March 4, 1907 (34 Stat. 1415), the defendant, beginning at the hour of 5:30 a. m. on December 21, 1912, upon its line of railroad between the stations of Lordsburg, in the state of New Mexico, and Benson, in the state of Arizona, required and permitted the conductor, B. T. Sullivan, the engineer, Billy F. Eaker, the fireman, Frank H. Kempf, and three trainmen, W. E. Brown, H. F. Peacock, and C. G. Harrison on regular local freight train extra west, drawn by locomotive engine No. 2813, engaged in interstate traffic, to be and remain on duty for a longer period than 16 consecutive hours. The defendant's answer denied any violation of the act of Congress.

[1, 2] The case was tried before the court and a jury. At the close of the evidence the plaintiff moved for a directed verdict in its favor upon each of the causes of action here involved. A similar motion was made by the defendant, with the further request that, in case such motion be denied, it have leave to go to the jury. The motion of the plaintiff was granted, and that of the defendant, including the motion for leave to go to the jury, was denied. The rule that, where each

party asks the court for a peremptory instruction for a directed verdict in his favor, the proceeding is equivalent to a request for a finding of facts by the court, and, if the court directs the jury to find a verdict for one of the parties, both are concluded on the findings of fact (Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654), is not applicable here, in view of the additional motion of the defendant that in case its motion for a directed verdict in its favor be denied it have leave to go to the jury. Empire State Cattle Co. v. Atchison Ry. Co., 210 U. S. 1, 8, 9, 28 Sup. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70. The validity of the peremptory instruction in favor of the plaintiff must therefore depend upon whether the evidence was so undisputed, or was of such a conclusive character as would have made it the duty of the court to set aside the verdict, if the case had been given to the jury and a verdict returned in favor of the defendant. Empire State Cattle Co. v. Atchison Ry. Co., supra, 210 U. S. 1, 10, 28 Sup. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70.

"A case cannot properly be withdrawn from the consideration of the jury simply because, in the judgment of the court, there is a preponderance of evidence in favor of the party asking a peremptory instruction. If the facts are entirely undisputed or uncontradicted, or if, upon any issue dependent upon facts, there is no evidence whatever in favor of one party, or, what is the same thing, if the evidence is so slight as to justify the court in regarding the proof as substantially all one way, then the court may direct a verdict according to its view of the law arising upon such a case." Smith-Booth-Usher Co. v. Detroit Copper Mining Co., 220 Fed. 600, 136 C. C. A. 58.

[3] Whether in the present case there was any testimony tending to show that the defendant had not in fact required or permitted the employés named to be and remain on duty for a longer period than 16 consecutive hours depends in part upon the construction of the statute. Section 2 of the act of March 4, 1907 (34 Stat. 1415), provides as follows:

"That it shall be unlawful for any common carrier, its officers or agents, subject to this act to require or permit any employé subject to this act to be or remain on duty for a longer period than sixteen consecutive hours, and whenever any such employé of such common carrier shall have been continuously on duty for sixteen hours he shall be relieved and not required or permitted to again go on duty until he has had at least ten consecutive hours off duty; and no such employé who has been on duty sixteen hours in the aggregate in any twenty-four hour period shall be required or permitted to continue or again go on duty without having had at least eight consecutive hours off duty."

There are two separate and distinct periods of duty provided for in this section. The first period is that referred to in the first clause of the section, and that period is designated as "sixteen consecutive hours." The second period is that referred to in the second clause of the section, and that period is designated as "sixteen hours in the aggregate." The purpose of the distinction in the two periods of duty is found in the following provision requiring succeeding periods of rest. When an employé has been *continuously* on duty for 16 hours, he must be relieved, and not required or permitted again to go on duty until he has had at least 10 consecutive hours off duty; and when he has been on duty 16 hours in the *aggregate* in any 24-hour period, he

must not be required or permitted to continue or again go on duty without having at lease 8 hours off duty.

It is not charged that, after the periods of duty or service between Lordsburg and Benson, the employés were required or permitted to continue or again go on duty without having had the period of rest provided for in the statute. The complaint is that between these two stations, and between the hours of 5:30 a. m. December 21, 1912, and 12:40 a. m. December 22, 1912, there was a continuous duty for the employés, and in the performance of that duty they were required and permitted to be and remain on duty for a longer period than 16 consecutive hours. The defense is that, by reason of unavoidable delays in operating the train, the conductor and trainmen were released from duty at Bowie, an intermediate station, from 9:15 a. m. until 11:40 a. m. December 21st, and again from 1:20 p. m. to 2:20 p. m. on that date, and that the engineer and fireman were released from duty at the same station from 1:30 p. m. to 2:30 p. m., and again at Cochise at 10:29 p. m., when the release was final, and they were carried deadhead to Benson. It is claimed that the two periods of release of the conductor and trainmen at Bowie, aggregating 3 hours and 25 minutes, should be deducted from the total time, reducing the aggregate of the two periods of actual duty to 15 hours and 45 minutes, and that the release of the engineer and fireman of one hour at Bowie and their final release and discharge at Cochise at 10:29 p. m. should be deducted from the total time, reducing the aggregate of their periods of actual duty to 15 hours and 59 minutes.

The government contends that these deductions, other than the final release and discharge of the engineer and fireman at Cochise, cannot be made; that when a train crew starts with a train to a designated terminal, and has the duty of taking that train to such terminal, it remains on duty within the meaning of the statute, notwithstanding any temporary delays, and regardless of any releases en route, unless the duty to perform services on that trip is finally released and discharged. It is also contended that a duty of 16 hours in the aggregate is only permitted where there is more than one unit of service during the 16 hours, as, for example, where there are assignments of duty for one or more periods on different trains, and the aggregate of such periods does not exceed 16 hours. In other words, the claim is that the operation of a train from its point of origin to its point of destination is a unit, that the duty to operate such train by employés from its point of origin to its point of destination is also a unit, and that delays with corresponding releases along the road are merely incidental, and do not in law affect the continuous duty for the unit of service, whatever that may be. In the present case the freight train in question was being operated between Lordsburg and Benson. The regular time schedule for this run was 10 hours; the distance was 115 miles. It is contended on the part of the government that this was a unit of duty, and, whatever delays the train might encounter in making the run, there could be no release for such delays, except the final release, relieving the employés from the 16 hours of continuous duty.

We find no authority for this construction of the statute. In our opinion the statute means what it says, and is not limited otherwise than by its own terms. In this conclusion we are supported by the decision of the Supreme Court of the United States in the case of United States v. Atchison, Topeka & Santa Fé Ry. Co., 220 U. S. 37, 31 Sup. Ct. 362, 55 L. Ed. 361. In that case the court had under consideration the provision of the same act and section relating to the hours of service of telegraph operators. That provision is as follows:

"No operator, train dispatcher, or other employé who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period. * * *"

The operator in that case went on duty at 6:30 a. m. and worked until 12 m. He was then given an intermission until 3 p. m., and then worked until 6:30 p. m., making in all 9 hours' actual service, but 12 hours from the beginning to the end of the service. It was contended on the part of the government that this was a service of 12 hours, notwithstanding the intermission of 3 hours, and that the statute had been violated. The trial court so held in a trial before a jury. But the Supreme Court ruled otherwise. Mr. Justice Holmes, for the court said:

"The proviso does not say 9 'consecutive' hours, as was said in the earlier part of the section, and if it had said so, or even 'for a longer period than a period of 9 consecutive hours,' still the defendant's conduct would not have contravened the literal meaning of the words. A man employed for 6 hours, and then, after an interval, for 3, in the same 24, is not employed for a longer period than 9 consecutive hours. Indeed, the word 'consecutive' was struck out, when the bill was under discussion, on the suggestion that otherwise a man might be worked for a second 9 hours after an interval of half an hour. In order to bring about the effect contended for, it would have been necessary to add, as the section does add in the earlier part, a provision for the required number of consecutive hours off duty. The presence of such a provision in the one part and its absence in the other is an argument against reading it as implied. The government suggests that, if it is not implied, a man might be set to work for 2 hours on and 2 hours off alternately. This hardly is a practical suggestion. We see no reason to suppose that Congress meant more than it said. On the contrary, the reason for striking out the word 'consecutive' in the proviso given, as we have mentioned, when the bill was under discussion, and the alternative reference in section 2 to 'sixteen consecutive hours' and 'sixteen hours in the aggregate,' show that the obvious possibility of two periods of service in the same 24 hours was before the mind of Congress, and that there was no oversight in the choice of words."

This construction of the statute is applicable here, and determines that as a matter of law there may be periods of duty with intermissions between, providing the aggregate of such periods do not exceed 16 hours, and providing, further, that thereafter there are at least 8 consecutive hours off duty in any 24-hour period. But whether these intermissions are such as the law will recognize depends upon their character as periods of substantial rest. The purpose of the law is declared in its title to be "to promote the safety of employés and travelers." An overworked employé is a distinct menace to such safety, and to provide against it the hours of service are limited by periods

of rest wherein the employé may be relieved from the fatigue and the strain of work. In the case of United States v. Chicago, M. & P. S. Ry. Co. (D. C.) 197 Fed. 624, before Judge Rudkin, of the Eastern district of Washington, the question at issue was substantially the same as in the present case. The trial was by the court without a jury, and the judgment of the court was in effect a finding of facts, with conclusions of law. The court held that a lay-off of 30 to 45 minutes for breakfast, and a lay-off of about one hour each for the midday and evening meals, did not break the continuity of service. The court also held that an indefinite lay-off of 3 hours, while the train crew was awaiting the arrival of an extra engine at a small way station, did not break the continuity of the service; but the court observed that, if the crew had been laid off for a definite period of 3 hours at a terminal or other place where the crew might have rested, such lay-off would no doubt break the continuity of the service. This decision was referred to approvingly by the Supreme Court in Missouri, K. & T. Ry. v. United States, 231 U. S. 112, 119, 34 Sup. Ct. 26, 58 L. Ed. 144, as was the case of United States v. Denver & R. G. Ry. (D. C.) 197 Fed. 629. In the latter case Judge Pope, of the district of New Mexico, without the aid of a jury, and finding the facts and conclusions of law, held that, when a train was held upon a siding at a station for 55 minutes to allow another train to pass, the exact time of arrival of the latter train being uncertain, and it being the duty of the crew of the former train to resume the work of moving their train immediately upon such arrival, the crew was on duty during the period of waiting. These cases were determined upon issues of fact as well as upon questions of law. With respect to the latter it was held that the release of the employé must be definite and certain as to the period of time, and substantial and opportune as to the period of rest. A release for meals, or to stand and wait for another train, is not sufficient. There must be a substantial and opportune period; otherwise, the duty is a continuous one.

[4] In the present case, with respect to the first period of release, from 9:15 a. m. to 11:40 a. m., the order of the train dispatcher at Tucson to the agent at Bowie was:

"As you have to use the local engine, there will be no engine for local crews to work with. Release the local crews, and call for when can give them an engine. Advise time released and recalled. See it is as much as an hour, so we can get credit for it."

This order appears to be uncertain as to time, and made only for the purpose of claiming credit for the time of the release as a period of time when the crew was off duty. The train dispatcher testified with respect to this order:

"In case they [the crew] were wanted, it would have been necessary to send out and notify them. I could not have canceled that release until I had gotten word to the men. If I had found we wanted them at 10 o'clock, I had a right to call them; but I didn't need them."

On the other hand, Sullivan, the conductor, testified with respect to this period that he did not receive any message at Bowie that he was released, and that the operator told him he would be off duty until called; but he testified, further, that he spent the time sitting around the

hotel at Bowie, and reading; that he did not perform any duty for the company during that time; that both he and the trainmen could have gotten into an automobile and gone into the country until 11:40 a. m., had they so desired; that they were free and their time was absolutely their own.

· With respect to the period of release from 1:20 p. m. to 2:20 p. m. there was a definite release for one hour. Sullivan testified that during that period his time, and the time of his trainmen, was absolutely their own; that they were free to come and go as long as they were back at 2:20 p. m. With respect to the period of release of the engineer and fireman at Bowie from 1:30 p. m. to 2:30 p. m., that was also a definite release of one hour. The engineer testified that during that time neither he nor his fireman was expected to work; that they could do as they pleased during that hour, and they did do as they pleased; that he ate and smoked a cigar, and laid down and took a nap, and got rested. Was this a substantial and opportune period of rest, under all the circumstances? The testimony clearly presented questions of fact for the jury, to be determined under appropriate instructions as to the law. It was not for the court to find the facts, when a jury had been impaneled for that purpose. It may be that this case came within the twilight zone, referred to by Judge Rudkin in United States v. Northern Pacific Ry. Co. (D. C.) 213 Fed. 539; and, if it does, we know of no better way of disposing of the issues than by submitting the facts to the determination of a jury. The motion of the defendant that the case be submitted to the jury should therefore have been granted.

Judgment reversed, with instructions to grant a new trial.