MINNEAPOLIS & ST. L. R. CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. July 21, 1917. Dissenting Opinion August 9, 1917.)

No. 4880.

MASTER AND SERVANT ⬯13—HOURS OF SERVICE ACT—CONTINUOUS SERVICE.

Hours of Service Act March 4, 1907, c. 2939, § 2, 34 Stat. 1416 (Comp. St. 1916, § 8678), provides that a railroad train employé shall not be required or permitted to remain on duty for a longer period than 16 consecutive hours, that when he has been on duty continuously for 16 hours he shall not be permitted to again go on duty until he has had at least 10 consecutive hours off duty, and that when he has been on duty for 16 hours in the aggregate in any 24-hour period he shall not be permitted to again go on duty until he shall have had at least 8 consecutive hours off duty. *Held* that, in view of the purpose of the act to keep up the efficiency of the men charged with the running of trains, where freight train crews made round trips, covering from start to return between 17 and 18 hours, the giving to such crews of an absolute release from duty of from 2 to 2½ hours at the other end of the run did not break the continuity of the service, which exceeded the statutory limit of 16 hours.

Sanborn, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Action at law by the United States against the Minneapolis & St. Louis Railroad Company. Judgment for the United States, and defendant brings error. Affirmed.

For opinion below, see 236 Fed. 414.

R. B. Alberson, of Des Moines, Iowa (F. M. Miner, of Minneapolis, Minn., Crom. Bowen, of Des Moines, Iowa, and W. H. Bremner, of Minneapolis, Minn., on the brief), for plaintiff in error.

Philip J. Doherty, Sp. Asst. U. S. Atty., of Washington, D. C. (Claude R. Porter, U. S. Atty., of Centerville, Iowa, on the brief), for the United States.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

CARLAND, Circuit Judge. This was an action by the United States to recover penalties from the railroad company for having permitted certain of its employés to be or remain on duty for a longer period than 16 consecutive hours. Section 2, c. 2939, 34 Stat. 1416. There were 19 counts in the complaint, upon each of which judgment was rendered in favor of the plaintiff. The action was tried to the court, and special findings of fact were made. The only question before us is: Do the facts found support the judgment?

The different employés of the railroad company are divided by the findings of fact into four groups.

Group 1 includes J. D. Haggin, an engineer, and H. C. Hoyer, a fireman. These employés were operating an extra helper engine between Marshalltown and Abbott, Iowa. On December 10, 1914, said engineer and fireman began service at 9:40 o'clock p. m., and continued service until 3:30 o'clock p. m. on December 11, 1914, a period which, if consecutive, is 17 hours and 40 minutes. They returned from a trip to Abbott at 4:35 a. m. December 11th, at which time they were absolutely released from service until 6:55 o'clock a. m., a period of 2 hours and 20 minutes. During said period the engine was left at the water tank. The engineer went to the roundhouse, about a block away, and registered. He then went from there to a restaurant and had breakfast, which occupied about 30 minutes. Then he returned to the roundhouse, spending about 15 minutes upon his way visiting and talking. He remained at the roundhouse until 6:55 a. m., which was the termination of the period of release. He then took charge of his engine. The engineer lived in Marshalltown, about six blocks from where the engine was left; but he did not go to his home, because he did not want to awaken his wife. There were no facilities for rest in the roundhouse, except some wooden benches; but he laid down upon one of those and slept a little for half an hour or more. He did not remove his clothes or retire for rest, except as aforesaid. The engineer registered in at Marshalltown at 4:35 a. m. after he got off his engine and walked down to the roundhouse, a block away. He registered out at 6:55 on the same morning. Hoyer, the fireman, carried a lunch with him on the engine, and generally ate a little every time the engine stopped. He left the engine at the same

time as the engineer, did not have to register, but went direct to the restaurant, which was about two blocks from the engine, and had his breakfast; had a regular place for sleeping, about eight blocks from the yards, but did not go there to sleep, and did not sleep at all, "fooled around" until about starting time, and played some pool at the restaurant.

Group 2 includes J. P. Boyce and J. W. Gibson, engineers; B. McDonough and V. Miller, firemen; C. Vandraska, conductor; C. A. Benson and M. C. Satchell, brakemen. These men constituted a crew operating a freight train with two engines from Grinnell to Oskaloosa, Iowa, and return. They entered service at 6:30 a. m., December 27, 1914, and terminated service at 11:45 p. m. on December 27, 1914, a period which, if consecutive, is 17 hours and 15 minutes. They were absolutely released from service at Oskaloosa from 5 p. m. to 7 o'clock p. m., a period of 2 hours. What this crew was doing during the period of release does not appear.

Group 3 includes J. T. Elder, engineer; E. L. Howell, fireman; S. S. Walton, conductor; W. G. Risney and T. E. Young, brakemen. They composed a crew operating freight trains from Oskaloosa to Marshalltown, Iowa. They entered upon service at 8:45 a. m. January 20, 1914, and continued service until 2 a. m. January 21st, which, if consecutive, amounted to 17 hours and 15 minutes. There was a period of absolute release of 2 hours at Marshalltown, Iowa, from 3:35 p. m. to 5:35 p. m. on January 20th. The crew again entered service at 8:45 a. m., but waited until 9:40 a. m. before the train was ready to start. At Marshalltown the engine was left at the round-house, about a half block from the depot. The engineer went to the roundhouse and reported, and then went to a restaurant, about two blocks away, and ate his supper, which took 20 or 30 minutes. There was no place specially provided for sleeping. There were some pillows and bedding in the caboose, furnished by the trainmen and conductor for their own use, and they could sleep upon the cushion seats extending lengthwise; and this courtesy was extended to the firemen and engineer, if requested. Howell, the fireman, left the engine at the same time as the engineer, and went to the restaurant and had supper. Neither the fireman nor engineer had any home or place to sleep in Marshalltown, except as aforesaid, and except as to the benches that were present in the roundhouse. Walton, the conductor, also went to the restaurant; had no place for sleeping in Marshalltown, except as aforesaid; and it does not appear that he slept any at that point. What the brakeman did does not appear.

Group 4 includes B. F. Rinehart, engineer; W. F. Lewis, fireman; E. Hearne, conductor; A. C. Miller and John Donner, brakemen. They were a crew operating a freight train from Oskaloosa to Marshalltown, Iowa. They entered service on January 28, 1915, at 6:15 p. m., and terminated service at 12:10 p. m. January 29th, a period which, if consecutive, is 17 hours and 55 minutes. There was a 2-hour period of absolute release from 4:50 a. m. to 6:50 a. m. on January 29th, at Marshalltown. Rinehart lived at Oskaloosa; had no special place to sleep in Marshalltown; ate his breakfast three or four blocks from where he left his engine. There were places where workmen could

sleep within a block or half block of the yards at Marshalltown. The fireman had breakfast about the same time; did not go to sleep; no sleeping place in Marshalltown. There was bedding in the caboose, and Hearne, the conductor, went to the caboose and went to sleep for awhile. The accommodations in the caboose were cushion seats lengthwise of the car, about 2½ feet wide and about 34 feet long. There were seats on both sides. Miller and Donner had the privilege of sleeping there. The periods of release mentioned in the four groups were absolute, and so understood by the employés.

None of the employés did any work, during the periods of release mentioned, about engines, cars, or equipments of the railroad company, or any other work in connection with their employment. Marshalltown, Iowa, is a terminal of defendant company, and a city of 16,000 or 18,000 inhabitants. Oskaloosa is a city of 8,000 or 9,000 inhabitants.

The question presented by these findings of fact is: Were the periods of release, taking into consideration the purposes of the law, periods of rest or off duty which the law requires? If they were, then there was not in any case a longer period of service or on duty than 16 consecutive hours. If, on the contrary, these periods were of such length, or at such a time and place, or in connection with such service, that, although absolutely relieved from duty, the employés did not receive that rest which it was the policy of the law to secure, then the periods of release did not prevent the hours of service from being consecutive and the law was violated. In United States v. Atchison, Topeka & Santa Fé Railroad Co., 220 U. S. 37, 31 Sup. Ct. 362, 55 L. Ed. 361, it was decided that under section 2 a telegraph operator employed for 6 hours, and then after an interval for 3 hours, is not employed for a longer period than 9 consecutive hours. By section 2 it is also provided that, where an employé of a common carrier has been continuously on duty for 16 hours, he shall be relieved and not required or permitted again to go on duty until he has had at least 10 consecutive hours off duty, and no such employé who has been on duty 16 hours in the aggregate in any 24-hour period shall be required or permitted to continue or again go on duty without having had at least 8 consecutive hours off duty. We are of the opinion that, under the law and the decision of the Supreme Court in the case cited, the period of 16 hours may be divided; but the law in regard to employés other than operators, train dispatchers, or those engaged in similar service is not the same as the law in regard to operators. The law does not say that an employé shall not be permitted to be or remain on duty for a longer period than 16 consecutive hours in any 24-hour period, and the hours of service for operators is much less than those for employés in general.

In regard to employés in general the law provides that, after an employé shall have been continuously on duty for 16 hours, he shall be relieved, and not required or permitted again to go on duty until he has had at least 10 consecutive hours off duty. This would make a total period of 26 hours. It then provides that, if an employé has been permitted to be or remain on duty 16 hours in the aggregate in any 24-hour period, said employé shall not be required or permitted

to continue or again go on duty without having had at least 8 consecutive hours off duty; the intention of Congress being apparently that, if the 16 hours of service is divided, then the period of release affects the time which the employé is entitled to remain off duty at the end of his service. We make this statement for the purpose of showing that the time of release must be for all intents and purposes of the same character, except as to length of time as the period which the employé is permitted to be and remain off duty after the end of the period of service. It will be seen, whether we consider the period of 8 hours applicable to employés who have been permitted to be and remain on duty in the aggregate for 16 hours or the period of 10 hours applicable to employés who have been on duty for 16 consecutive hours, that the period of rest is much less than is given to operators and train dispatchers or employés engaged in like service, so that it would be impossible to divide up the 16-hour period to the same extent as may be done with the last-named class of employés. The intent and purposes of the law must not be lost sight of in attempting to divide the 16 hours of service. The object and purpose of the Hours of Service Act has been often stated by the courts, and has again been recently stated in the case of Atchison, Topeka & Santa Fé Railway Co. v. United States, 244 U. S. 336, 37 Sup. Ct. 635, 61 L. Ed. 1175 (June 4, 1917), in the following language:

"Considering these opposing contentions, it must be remembered that the purpose of the act was to prevent the dangers which must necessarily arise to the employé and to the public from continuing men in a dangerous and hazardous business for periods so long as to render them unfit to give that service which is essential to the protection of themselves and those intrusted to their care. It is common knowledge that the enactment of this legislation was induced by reason of the many casualties in railroad transportation which resulted from requiring the discharge of arduous duties by tired and exhausted men, whose power of service and energy had been so weakened by overwork as to render them inattentive to duty or incapable of discharging the responsible labors of their positions."

That an employé is absolutely relieved from service is not of controlling importance, if the time is so short or the opportunities for rest are so meager that for all practical purposes an employé does not have the opportunity for rest which the law requires. It was decided in Southern Pacific Co. v. United States (Circuit Court of Appeals, 9th Cir.) 222 Fed. 46, 137 C. C. A. 584, that whether the break or intermission in the hours of service are such as the law will recognize depends upon their character as periods of substantial rest, and that the question as to whether the periods of release gave opportunity for substantial periods of rest was for the jury, under the evidence in each case. In United States v. Chicago, M. & P. S. Ry. Co. (D. C.) 197 Fed. 624, and United States v. Denver & R. G. R. Co. (D. C.) 197 Fed. 629, cited with approval by the Supreme Court in Missouri, K. & T. Ry. Co. v. United States, 231 U. S. 112, 34 Sup. Ct. 26, 58 L. Ed. 144, it was decided that not every release from duty was such as the law contemplated, but that each release must be determined according to the facts in the particular case. There may be cases, undoubtedly, where the release is for such a time and under such circumstances that the court may say as matter of law that the release

was or was not such as to be within the requirement of the law; but in the present case the parties waived a jury, and submitted the facts and all legitimate inferences to be drawn therefrom to the trial court for decision. That court found that the periods of release under the circumstances did not break the consecutive character of the hours of service, and entered judgment accordingly.

We are of the opinion that the periods of release were periods of waiting which gave no proper opportunity for rest. The service was what is termed a "turn-around" service. If the train crew can be given an absolute dismissal for the time which elapses at any particular terminal before the return trip is made, with only the opportunity for rest which is shown by the evidence in this case, and such time is held to break the consecutive hours of service, then the purpose of the law will be largely defeated, and the employés permitted to remain on duty for a longer period than is lawful.

We are therefore of the opinion that the judgment should be affirmed; and it is so ordered.

SANBORN, Circuit Judge (dissenting). The statute forbids any common carrier to permit an employé to be or remain on duty "for a longer period than 16 *consecutive* hours" and provides that when he has been on duty *continuously* for 16 hours he shall not be permitted to go on duty again until he has had "at least *10 consecutive* hours off duty," and when he has been on duty "16 hours in the aggregate" he shall not be permitted to continue or go on duty without having at least *8 consecutive* hours off duty. The italics are mine, and are used to challenge attention to the fact that it is a continuous service, without break or intermission, for a long period of consecutive hours, against which the portion of the law here invoked is especially leveled, and to the fact that the term "consecutive hours" is used three times in the section, once to describe the term of continuous service permitted, 16 consecutive hours, and twice to describe terms off duty, at least "10 consecutive hours" in one case, and "at least 8 consecutive hours" in the other.

The record in this case discloses the fact that each of the employés whose service is the occasion of this action was absolutely released from duty by the employer for a definite period of at least 2 consecutive hours during a term of service which, if this intermission is counted as a part of it, did not amount to quite 18 hours, and that each employé was made fully aware of the fact of his freedom from service before this intermission therein commenced. Moreover, these releases were at terminals of the trips of the employés, or at terminals of the runs of their trains where the employés could obtain the accommodations of railroad stations, restaurants, and houses, and could be and were relieved of the mental tension as well as the manual labor of their service, and could be and were free from all care of their engines, or anything connected with the property of their employer. The law does not require the employer to compel its employés to sleep, or to rest, or to play, or to work during the intermission when they are off duty. It requires simply that they shall be relieved from continuous service

during consecutive hours. A service of 8 hours, an intermission of 2 hours in which the employé is relieved of all duty and is free from service, followed immediately by a service of 8 consecutive hours, cannot be a service of 16 consecutive hours. If it is, then under the following provision of the statute an employé who, after serving for 16 consecutive hours, has 5 hours off duty, then 2 hours on duty, followed immediately by 5 hours off duty, has at least 10 consecutive hours off duty, and one who, after serving 16 hours in the aggregate in 24 hours, has 4 hours off duty, then 2 hours on duty, immediately followed by 4 hours off duty, has at least 8 consecutive hours off duty. This does not seem to me to be a permissible construction of the statute. The words "consecutive" and "continuously" in this statute seem to me to be not only significant, but controlling. It is common knowledge that continuous service for 16 consecutive hours exhausts, wearies, and weakens men, and tends to render them inattentive to duty, or incapable of discharging their duties, far more than an aggregate service of 16 hours in two periods of 5 hours and 11 hours each, with an intermission between them of 2 hours off duty—2 hours of absolute relief from the strain, care, tension, and labor of their duties. And it was against this exhaustion of continuous service for more than 16 consecutive hours that this statute was leveled. This is made plain by the express provision in the section under consideration that 10 consecutive hours off duty are required where the employé has been on duty for 16 consecutive hours, while only 8 consecutive hours off duty are required when he has been on duty 16 hours in the aggregate, but not 16 consecutive hours, in any 24-hour period. Judge Pollock in United States v. Atchison, Topeka & Santa Fé Ry. Co. (D. C.) 232 Fed. 196, 197, well remarked:

"Having in mind the purpose of Congress in the enactment of the law, that purpose is better subserved by permitting an operator to work 9 hours out of 10, with one hour absolutely his own, except in cases of emergency, that he might take his meals, relax, and have recreation, than would be the case where he is permitted to work 9 * * * consecutive hours."

And in United States v. Atchison, Topeka & Santa Fé Ry. Co., 220 U. S. 37, 44, 31 Sup. Ct. 362, 55 L. Ed. 361, where a telegraph operator was employed from half past 6 o'clock in the morning until 12, and again from 3 p. m. to half past 6, or 9 hours in all, with an intermission of 3 hours, the Supreme Court declared that:

"A man employed for 6 hours and then, after an interval, for 3, in the same 24 hours is not employed for a longer period than 9 consecutive hours."

Because each of the employés whose service was the occasion of this action was fully released from duty, and from all care, tension, and labor for his employer, and knew that fact before the commencement of the intermission, for a definite period of more than 2 consecutive hours during the time, which was less than 18 hours, that it is claimed that he was on duty, because the company was not required under the law to make him sleep or rest or recreate, nor was the company required to do more than to relieve him from duty, so that he could have an opportunity to rest his mind and his body, and relax from the strain

and tension of continuous thought and action for his employer, because the main purpose of the provision of this law under which this action is brought was not to forbid, but to permit, service for 16 hours in the aggregate within 24 hours, where, as in this case, there is an intermission of a substantial length of time, such as 2 hours between the hours of actual service constituting that aggregate, because that provision of the law is leveled at continuous service for more than 16 consecutive hours, and its object is to relieve the weariness and exhaustion resulting from continuous mental strain and physical labor without intermission for relaxation, because employés on duty 6 hours, then off duty 2 hours, and then on duty 10 hours, are not on duty 16 consecutive hours, and because while the employés in this case were on duty, if the intermission be counted, a little more than 16 hours in the aggregate, I am unable to bring my mind to assent to the view that these men, who rendered less than 16 hours of actual discharge of duty, broken in each case by an interval or intermission of more than 2 consecutive hours, during which they were free from all duty, were on duty more than 16 consecutive hours, I am unable to resist the conclusion that the company was not liable for a violation of this law.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes