**BOCOOK v. LOUISVILLE & N. R. CO.**
**No. 414.**

District Court, E. D. Kentucky.
July 25, 1946.

James Park and Stoll, Muir, Townsend, Park & Mohney, all of Lexington, Ky., and Hunter M. Shumate and Shumate & Shumate, all of Irvine, Ky., for plaintiff.

Samuel M. Wilson, C. S. Landrum, Ben L. Kessinger, Rufus Lisle, and Wilson, Harbison, Kessinger, Lisle & Bush, all of Lexington, Ky., for defendant.

FORD, District Judge.

This is an action under the Federal Employers' Liability Acts, 45 U.S.C.A. § 51 et seq., for damages on account of the defendant's violation of the Federal Safety Appliance Acts, 45 U.S.C.A. § 1 et seq., which resulted in the death of Fred A. Bocook, while employed in the operation of defendant's railroad in interstate commerce.

The case is submitted upon the defendant's motion to set aside the verdict of the jury awarding damages to plaintiff and the judgment entered thereon and to enter judgment for the defendant, notwithstanding the verdict, Rule 50(b), Federal Rules Civil Procedure, 28 U.S.C.A. following section 723c, on the ground that at the time and place of his injury "defendant owed plaintiff's decedent no duty

except to refrain from willful or wanton injury to him, of which there is no evidence in the record."

On the day of his injury, Mr. Bocook was the conductor in charge of defendant's passenger train which was then being operated in interstate commerce upon defendant's main line of railroad in a northerly direction from McRoberts, Ky. Some time after leaving McRoberts, Mr. Bocook received orders for his train to pass one of defendant's south bound freight trains, which was also moving in interstate traffic, at a place known as White Ash where a side track leads off the East Side of the main track. As Mr. Bocook's train approached the White Ash siding it was discovered that, due to the disabled condition of one of its cars, the freight train had not yet moved on to the side track but was standing on the main track a short distance north of the entrance to the switch. The passenger train was stopped on the main track with its engine about 200 feet south of the north entrance to the switch at a point 20 or 30 feet south of a clearance post which marked the proper position for it to stop on the main track to enable a train traveling in the opposite direction to enter and pass on the siding. The drawbar which held the coupler on one of the freight cars was broken to such an extent as to deprive the car of the use of the coupler, thus making it necessary that the passenger train remain standing idle in the position which it had taken until the disabled car could be moved and placed upon the side track. After moving the other cars from in front of it, the disabled freight car was attached to the engine of the freight train by means of a chain placed over and around the housing upon the end of the front axle and in this manner the crew of the freight train undertook to draw the disabled car along the main track through the switch and on to the siding. After passing over the switch and while thus being hauled on the side track, the disabled freight car jumped the track and proceeded across to the main track where Mr. Bocook, with the engineer and fireman of his passenger train, was sitting upon the end of the ties of the main track at a point approximately 20 feet in front of the engine of the passenger train. The derailed car struck and seriously injured Mr. Bocook and then struck the pilot beam of the passenger engine. About two months thereafter Mr. Bocook died from the injuries so received.

Section 2 of the Safety Appliance and Equipment Act, 45 U.S.C.A. § 2, provides: "It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

Section 13 of the Act relieves the carrier from the penalty prescribed therein where such a disabled car is being hauled to the nearest available point for repairs; but it further provides: "* * * such movement or hauling of such car shall be at the sole risk of the carrier, and nothing in this section shall be construed to relieve such carrier from liability in any remedial action for the death or injury of any railroad employee caused to such employee by reason of or in connection with the movement or hauling of such car with equipment which is defective or insecure or which is not maintained in accordance with the requirements of this chapter; * * *."

The language of the Act thus makes it entirely clear that in the exercise of its plenary power to regulate commerce between the States, Congress has deemed it proper, to make it unlawful for any carrier engaged in interstate commerce to use on its railroads any car not equipped with an automatic coupler and to impose liability upon such carrier to make compensation to any employee suffering injury as the proximate result of the use of any car moving in interstate traffic not so equipped, irrespective of the particular use made of such defectively equipped car at any particular time. Texas & Pacific R. v. Rigsby, 241 U.S. 33, 41, 36 S.Ct. 482, 60 L.Ed. 874.

In railroad injury cases, under the Federal Employers' Liability and Safety Appliance Acts, the Statute has expanded the concept of "proximate cause" so as to include a violation of the Safety Appliance Act which contributed to the injury or death of an employee or had such causal relation thereto that such injury or death resulted "in part" from the violation. Eglsaer v. Scandrett, 7 Cir., 151 F.2d 562. In view of this enlarged field of statutory liability, the evidence in this case leaves no room for reasonable dispute as to the fact that the failure of the defendant to have its freight car equipped with a coupler as required by the Safety Appliance Act was, within the meaning of the Statute, a "proximate cause" of Mr. Bocook's injury and death.

Asserting that Mr. Bocook's position on the railroad track was in violation of rules promulgated by the defendant for the government of its employees providing that "walking on or even being on railroad tracks except in direct line of duty is prohibited" and "sitting on the track at any time is absolutely forbidden", the defendant contends that at the time and place of his injury the defendant owed Mr. Bocook no duty to exercise ordinary care for his safety and argues that "the Safety Appliance Act creates no duty toward an employee where the duty of exercising ordinary care for his safety did not already exist."

Section 53 of the Employers' Liability Act provides: "In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, * * * no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee", and section 54 of the Act, as amended in 1939, provides: " * * * no employee shall be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

The statutory liability of a carrier for injury or death of its employee resulting from the carrier's failure to observe a requirement of the Safety Appliance Act is not conditioned upon the employee's observance of rules prescribed by the carrier nor does the liability arise from the carrier's common law duties growing out of the relation of master and servant nor depend upon the carrier's general duty to exercise ordinary care for the safety of its employee.

In Brady v. Terminal R. Ass'n, 303 U.S. 10, 15, 58 S.Ct. 426, 429, 82 L.Ed. 614, commenting upon the carrier's statutory duty under the Safety Appliance Act, the Court said: "The statutory liability is not based upon the carrier's negligence. The duty imposed is an absolute one, and the carrier is not excused by any showing of care, however assiduous."

In Louisville & Nashville R. Co. v. Layton, 243 U.S. 617, 620, 621, 37 S.Ct. 456, 457, 61 L.Ed. 931, Mr. Justice Clarke, speaking for a unanimous Court, said:

"The declared purpose of the Safety Appliance Act of 1893, c. 196, 27 Stat. 531, 45 U.S.C.A. § 1 et seq., and of the amendatory Acts of 1903 and of 1910 is 'to promote the safety of employees * * * upon railroads, by compelling common carriers engaged in interstate commerce to equip their cars with automatic couplers * * * and for other purposes,' and at the time the plaintiff was injured these acts made it unlawful for any carrier engaged in interstate commerce to use on its railroad any car not so equipped. Southern R. Co. v. United States, 222 U.S. 20, 32 S.Ct. 2, 56 L.Ed. 72; Southern R. Co. v. Railroad Commission of Indiana, 236 U.S. 439, 35 S.Ct. 304, 59 L.Ed. 661. By this legislation the qualified duty of the common law is expanded into an absolute duty with respect to car couplers, and if the defendant railroad companies used cars which did not comply with the standard thus prescribed, they violated the plain prohibition

158

of the law, and there arose from that violation a liability to make compensation to *any employee* who was injured because of it. * * *

"* * * The language of the acts and the authorities we have cited make it entirely clear that the liability in damages to employees for failure to comply with the law springs from its being made unlawful to use cars not equipped as required,—*not from the position the employee may be in, or the work which he may be doing at the moment when he is injured.* This effect can be given to the acts and their wise and humane purpose can be accomplished only by holding, as we do, that carriers are liable to employees in damages whenever the failure to obey these Safety Appliance Laws is the proximate cause of injury to them when engaged in the discharge of duty." (Emphasis supplied.)

In view of the above authorities, it seems quite clear that we are not here concerned with the question whether, at the time and place of the injury to Mr. Bocook, the defendant was absolved from its common law duties to him arising from the relation of master and servant or the general duty to exercise ordinary care for his safety. Lilly v. Grand Trunk R. Co., 317 U.S. 481, 491, 63 S.Ct. 347, 87 L.Ed. 411.

■ Moreover, the position of Mr. Bocook upon the railroad track at the time of his injury was obviously not a place of apparent or imminent danger, for in one direction he was protected by his standing train and in the other by the open switch. The rules forbidding an employee to occupy such a position on the track were merely of a cautionary nature and Mr. Bocook's failure to observe them, under the circumstances, could have amounted, at most, to nothing more than his contributory negligence or his assumption of the risk, both of which pleas the Statute has "swept into discard" as defenses to liability in cases of this nature and they "must not, contrary to the will of Congress, be allowed recrudescence under any other label in the common law lexicon." Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 64, 67, 63 S.Ct. 444,

449, 87 L.Ed. 610, 143 A.L.R. 967; Rocco v. Lehigh Valley R. Co., 288 U.S. 275, 53 S.Ct. 343, 77 L.Ed. 743; Chicago, G. W. R. v. Schendel, 267 U.S. 287, 45 S.Ct. 303, 69 L.Ed. 614; Norfolk & Western R. Co. v. Riggs, 6 Cir., 98 F.2d 612.

■ The final contention of the defendant is that during the time Mr. Bocook remained inactive, seated upon the railroad track in front of his train, he was performing no duty for the defendant in the course of his employment and that "While he was at such place and in such position, the relation of employer and employee, or rather the duty subsisting between him as conductor of the train and the defendant railroad company as his employer, was, under the law, temporarily suspended" and, consequently, at the time of his injury he was outside the scope of the Statute and not entitled to invoke its protection.

At all times in question the passenger train was in the care and custody of Mr. Bocook as its conductor and he remained charged with the responsibility for its movements and safety. He was in an advantageous place from which to keep within his observation both his own train, the movements of the freight train which was blocking the track ahead of him and to determine when the track would be sufficiently clear to enable his passenger train to continue its journey and to give orders to his crew accordingly. For the time being, no physical activity or service on his part was necessary or called for. His train was motionless. Neither he nor his train was in a position of apparent danger. It was his duty only to wait, and in so doing he was clearly engaged in his employment.

■ A mere temporary stoppage of work by a railroad employee due to a delay brought about by circumstances incident to the operation of the train upon which he is engaged, does not suspend, even temporarily, the relationship of employer and employee existing between the railroad company and its employee, especially where the employee remains continuously present and ready to resume his active labors when the

cause of the delay is removed, for such occurrences are obviously within the contemplation of the parties. Under such circumstances, the employee is regarded as "on duty" and engaged in his employment. This rule has been applied in many cases and under various circumstances. North Carolina R. Co. v. Zachary, 232 U.S. 248, 34 S.Ct. 305, 58 L.Ed. 591, Ann.Cas.1914C, 159; Missouri, K. & T. R. Co. v. United States, 231 U.S. 112, 34 S.Ct. 26, 58 L.Ed. 144; Erie R. Co. v. Winfield, 244 U.S. 170, 34 S.Ct. 556, 61 L.Ed. 1057, Ann.Cas.1918B, 662; United States v. Denver & R. G. R. Co., D.C., 197 F. 629; United States v. Atchison, Topeka & Santa Fe R. Co., 220 U.S. 37, 31 S.Ct. 362, 55 L.Ed. 361; Virginia R. Co. v. Early, 4 Cir., 130 F.2d 548.

In liberally interpreting and applying the Federal Employers' Liability and Safety Appliance Acts to accomplish their humane purpose in protecting railroad employees, the Federal Courts have followed the established rule in respect to remedial legislation. Lilly v. Grand Trunk R. Co., 317 U.S. 481, 486, 63 S.Ct. 347, 87 L.Ed. 411.

"The rights which the Act creates are federal rights protected by federal rather than local rules of law." Bailey v. Central Vermont Ry., 319 U.S. 350, 352, 63 S.Ct. 1062, 1063, 87 L.Ed. 1444.

In view of the undisputed facts established by the evidence and in the light of the applicable and controlling authorities, my conclusion is that at the time of his injuries which resulted in his death, plaintiff's decedent, Fred A. Bocook, was engaged in his employment by the defendant in interstate commerce as the conductor in charge of defendant's passenger train and as such employee he was within the scope of the protection afforded by the Federal Safety Appliance Acts, and plaintiff is entitled to invoke the liability of the defendant prescribed by the Federal Employers' Liability Acts.

Defendant's motion for judgment, notwithstanding the verdict, should be overruled.