### NORTHERN PAC. RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1915.)

No. 2432.

MASTER AND SERVANT ☞13 — RAILROADS — HOURS OF SERVICE ACT — TEMPORARY RELEASE FROM DUTY.

　　The temporary release from duty of a train crew during a run, because of delay in waiting for other trains to pass, does not break their continuity of service within the meaning of Hours of Service Act (Act March 4, 1907, c. 2939) § 2, 34 Stat. 1416 (Comp. St. 1913, § 8678), making it unlawful for an interstate railroad company to permit its train employés to remain on duty for a longer period "than sixteen consecutive hours."

　　[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ☞13.

　　Hours of service of employés, see note to United States v. Houston Belt & T. Ry. Co., 125 C. C. A. 485.]

In Error to the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by the United States against the Northern Pacific Railway Company to recover penalties. Judgment for plaintiff, and defendant brings error. Affirmed.

For opinion below, see 213 Fed. 539.

Edward J. Cannon, of Spokane, Wash., and Emerson Hadley, of St. Paul, Minn., for plaintiff in error.

Francis A. Garrecht, U. S. Atty., of Spokane, Wash., and Philip J. Doherty, Sp. Asst. U. S. Atty., of Washington, D. C., for the United States.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The plaintiff in error was defendant in the court below to an action brought by the government to recover penalties for the alleged violation of the act of Congress of March 4, 1907, entitled "An act to promote the safety of employés and travelers upon railroads by limiting the hours of service of employés thereon" (34 Stat. p. 1415).

The complaint contained several counts based upon alleged excessive hours of service by the several members of the same train crew, and the case was submitted to the court below without a jury upon a written stipulation of facts, and an additional stipulation between counsel made on the trial. The written stipulation, in addition to stating the incorporation of the railroad company, and that it is a common carrier engaged in interstate commerce, etc., is as follows:

"That on January 10, 1912, two employés of the said defendant, to wit, C. W. Hoffman, an engineer, and J. E. Rainey, a fireman, constituting the engine crew of defendant's engine No. 1507, hauling an extra freight train eastbound from Tacoma, in the state of Washington, to Cle Elum, in the same state, respectively went on duty as such engineer and fireman at 5:30 a. m. on said January 10, 1912; that said employés went off duty temporarily at Auburn, in the state of Washington, at 8:25 a. m., and returned to duty at 10 a. m. on said date, at said Auburn; and that said employés thereafter remained on duty as such engineer and fireman until 11 p. m. on said date. That on said January 10, 1912, four additional employés of the said defendant, to wit, R. E. Walsh, a conductor, and Thomas Kilcoyne, A. T. Feilds, and J. H. Wilson, trainmen, constituting the train crew of an extra east-bound freight train hauled on said date by defendant's locomotive No. 1507 from Tacoma, in the state of Washington, to Cle Elum, in the same state, respectively went on duty as such conductor and trainmen at 5 a. m. on said date; that said employés went off duty temporarily at Auburn, in the said state of Washington, at 8:25 a. m., and returned to duty at said Auburn at 10 a. m. on said date; and that said employés thereafter remained on duty as such conductor and trainmen until 10:30 p. m. on said January 10, 1912."

On the trial it was further agreed between the attorneys for the respective parties as follows:

"The train was ordered to leave Tacoma at 6 a. m., but was delayed at that point 45 minutes waiting for an engine which had been delayed between roundhouse and yard by derailment of yard cut, and therefore did not reach Auburn until 8:25 a. m., and it was then seen by the dispatcher, the witness here, that train would sustain a long delay at Auburn meeting superior trains, which were No. 603, No. 41, No. 257, and let No. 4 pass, and to take advantage of a release period the crew was instructed, on arrival at Auburn, that they were relieved from duty for 1 hour and 30 minutes, so that the train could, if possible, make Ellensburg within the allowed time."

Upon the foregoing facts, so agreed to, the judgment of the court below in favor of the government was based. From the delay of 45 minutes in starting the train from Tacoma, the railroad company must have anticipated that there would necessarily be delays en route because of the meeting of other trains, and of course knew that the law prohibited the service of the crew with which it started for more than 16 hours. One of such delays, it appears, occurred at Auburn, extending for a period of 1 hour and 30 minutes, during which time the crew was relieved from duty.

The sole question in the case is whether that temporary release of the crew from duty broke the continuity of its service within the meaning of the statute. We are of the opinion that it did not, and think such is the effect of the decision of the Supreme Court in the case of Missouri, K. & T. Ry. Co. v. United States, 231 U. S. 112, 34 Sup. Ct. 26, 58 L. Ed. 144. The run of the crew was not ended; it remained *the* crew of the train, temporarily relieved because of delays, the first of which occurred at its starting point, liable to be called at any moment, and not at all, as said by the counsel for the plaintiff in error, "at liberty to go away if they wished." In all essential particulars the delay in this case was like the delay while the engine was sent off for water and repairs, involved in the case cited, concerning which the Supreme Court said, at page 119 of 231 U. S., at page 27 of 34 Sup. Ct. (58 L. Ed. 144):

"In the meantime the men were waiting, doing nothing. It is argued that they were not on duty during this period, and that, if it be deducted, they were not kept more than 16 hours. But they were under orders, liable to be called upon at any moment, and not at liberty to go away. They were none the less on duty when inactive. Their duty was to stand and wait. United States v. Chicago, M. & P. S. Ry. Co. (D. C.) 197 Fed. 624, 628; United States v. Denver & R. G. R. Co. (D. C.) 197 Fed. 629."

The judgment is affirmed.