UNITED TRANSPORTATION UNION, Plaintiff-Appellant,

v.

Samuel K. SKINNER, Secretary of Transportation, et al., Defendants-Appellees.

BROTHERHOOD OF LOCOMOTIVE ENGINEERS, et al., Plaintiffs-Appellees,

v.

Samuel K. SKINNER, Secretary of Transportation, et al., Defendants-Appellants.

Nos. 90–16741, 91–35911 and 91–36061.

United States Court of Appeals, Ninth Circuit.

No. 90–16741: Argued Feb. 11, 1992.

Submission Deferred Feb. 19, 1992.

Resubmitted March 12, 1992.

Nos. 91–35911, 91–36061: Argued and Submitted March 12, 1992.

Decided Sept. 22, 1992.

**1422**

Frederick L. Nelson, Hildebrand, McLeod & Nelson, Oakland, Cal., for plaintiff-appellant.

John F. Daly and Sara Landise, U.S. Dept. of Justice, Washington, D.C., for defendants.

Lawrence M. Mann, Apler & Mann, Washington, D.C., for plaintiff-appellee.

Ralph J. Moore, Jr., Shea & Gardner, Washington, D.C., for amicus curiae, Ass'n of American Railroads.

Before: SCHROEDER, REINHARDT, and KLEINFELD, Circuit Judges.

REINHARDT, Circuit Judge:

These cases present the single question whether time spent by a railroad employee waiting for deadhead transportation from duty to his point of final release constitutes time on duty under the Hours of Service Act (HSA), 45 U.S.C. §§ 61–64b. Based on the language of the HSA and on its consistent interpretation by the courts throughout its 85–year history, we conclude that such waiting time is and always has been time on duty for purposes of the statute. Accordingly, we affirm the judgment of the district court for the District of Oregon in *Brotherhood of Locomotive Engineers v. Skinner* and reverse the order of the district court for the Northern District of California dismissing with prejudice the companion case of *United Transportation Union v. Skinner.*

I

The HSA was enacted in 1907 to promote railroad safety by setting limits on the hours worked by train crews, signal operators, and other railroad employees. Hours of Service Act, ch. 2939, § 1, 34 Stat. 1415 (1907). As originally worded, the statute provided for a maximum shift of sixteen hours, and specified that after completing a sixteen-hour shift, an employee was entitled to at least ten consecutive hours off duty. *Id.* § 2, 34 Stat. 1416 (codified as amended at 45 U.S.C. § 62(a)(1)). An employee who had been on duty for a total of sixteen hours within the preceding twenty-four hours was entitled to at least eight consecutive hours off duty. *Id.* (codified as amended at 45 U.S.C. § 62(a)(2)).

In 1969, Congress amended the HSA in order to resolve a dispute that had arisen between the railroads and the employees' unions regarding the treatment of time spent deadheading to and from duty assignments. Under the original HSA, all time was considered either "time on duty" or "time off duty". Because time spent by an employee deadheading to and from duty was not considered "time on duty" by the railroads, that time was counted as part of the employee's "time off duty". As a result, although the statute provided for a minimum of ten consecutive hours off duty between shifts, railroad employees were not in fact guaranteed ten hours of rest, but rather might spend part or all of their designated rest time deadheading from one assignment or to the next assignment.

As amended, the HSA defines "time on duty" to include time spent deadheading *to* an assignment, as well as some interim rest periods. 45 U.S.C. § 61(b)(3)(A)–(C). It further provides that time spent deadheading *from* an assignment shall not be considered either "time on duty" or "time off duty". *Id.* § 61(b)(3)(C). Instead, the proviso to subsection (C) establishes a third category of time, known in the industry as "limbo time", for such return deadheading. In full, the statutory definition of "time on duty" now reads as follows:

(3) Time on duty shall commence when an employee reports for duty and termi-

nate when the employee is finally released from duty, and shall include:

(A) Interim periods available for rest at other than a designated terminal;

(B) Interim periods available for less than four hours rest at a designated terminal;

(C) Time spent in deadhead transportation by an employee to a duty assignment: *Provided,* That time spent in deadhead transportation by an employee from duty to his point of final release shall not be counted in computing time off duty;

(D) The time an employee is actually engaged in or connected with the movement of any train; and

(E) Such period of time as is otherwise provided by this chapter.

45 U.S.C. § 61(b)(3). The 1969 amendments also reduced the maximum shift to twelve hours. 45 U.S.C. § 62(a)(1).

The dispute in the cases before us concerns the treatment under the HSA of time spent by a railroad employee *waiting* for the arrival of deadhead transportation from duty to his point of final release ("waiting time"). Under current industry practice, when the members of a railroad crew have worked eleven hours and fifty-nine minutes, they are required to stop the train and await the arrival of deadhead transportation bearing the relief crew. Crew members are not free to leave the train until the relief crew arrives, nor are they free simply to relax. To the contrary, during the waiting period they may be required to provide certain additional services for the railroad, should the need for any of those services arise. For example, waiting crew members are responsible for protecting the stopped train against vandalism and for ensuring that the brakes remain engaged. The parties do not dispute that employees who failed to perform either of these tasks, as needed, or who left the train unattended would be subject to discipline by the railroad. The parties also do not dispute that crew members frequently must wait several hours for their replacements to arrive.

Prompted by complaints from members that significant amounts of waiting time were not being included in the calculation

of their time on duty, several railroad unions requested an opinion from the Federal Railroad Administration (FRA), the body charged with enforcing the HSA, regarding the proper treatment of waiting time under the statute. The FRA responded that it did not consider waiting time to be "time on duty" under the HSA. Rather, wrote the FRA, waiting time, like time spent in deadhead transportation from duty to the point of final release, was properly classified as "limbo time"—neither "time on duty" nor "time off duty". The FRA acknowledged that crew members might be called upon to perform certain duties during the waiting period. It indicated that if such a need arose, crew members should be considered "on duty" only for the amount of time necessary to complete the required tasks.

The United Transportation Union (UTU), the designated collective bargaining representative for a variety of railroad crafts including trainmen, conductors, and yard service employees, filed suit against the FRA and the Secretary of Transportation in the district court for the Northern District of California. It sought a declaratory judgment that time spent by railroad employees waiting for the arrival of deadhead transportation from duty to their point of final release constituted "time on duty" under the HSA regardless of whether the waiting employees were actually required to perform any services for the railroad. In addition, the UTU requested injunctive relief and mandamus to compel the FRA to take appropriate enforcement action. The Brotherhood of Locomotive Engineers (BLE), which represents the craft of locomotive engineers in collective bargaining, filed an identical complaint in the district court for the District of Oregon.

The FRA filed a motion to dismiss *UTU v. Skinner* on the ground that the union lacked standing to seek to compel the agency to enforce the HSA. The FRA argued that regardless of which interpretation of the statute was correct, both particular enforcement decisions and more general decisions regarding enforcement policies and priorities were committed to agency discretion. Relying on *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714

(1985), and *Railway Labor Executives Ass'n v. Dole*, 760 F.2d 1021 (9th Cir.1985), the district court agreed with the FRA that the UTU lacked standing and dismissed the action with prejudice. The UTU timely appealed the order of dismissal.

The district court for the District of Oregon stayed proceedings in *BLE v. Skinner* pending the outcome of the UTU's lawsuit. Following the order of dismissal in *UTU*, the BLE amended its complaint by eliminating the requests for injunctive relief and mandamus. The amended complaint requested only a declaratory judgment regarding the proper interpretation of the HSA. The parties filed cross-motions for summary judgment. After examining the pre–1969 cases that addressed the treatment of waiting time under the HSA, the district court concluded that employees who are required to wait on a train for the arrival of deadhead transportation bearing their relief crew have always been considered to be "on duty" under the statute. The court further concluded that nothing in the 1969 amendments to the HSA altered or was intended to alter that longstanding interpretation. Accordingly, the district court granted summary judgment for the BLE. The FRA filed a timely appeal.

At the close of oral argument in *UTU*, we deferred submission of the case pending oral argument in *BLE*. At the *BLE* argument, the FRA, through the Department of Justice, withdrew its objection in *UTU* to the union's standing to seek declaratory relief under the HSA. The FRA expressly declared itself willing to adopt and enforce the interpretation of the HSA that is judicially determined to be correct. The appeals in the two cases were consolidated by order of this court.

**II**

■ As a preliminary matter, we note that with respect to the claims for injunctive relief and mandamus in *UTU*, we must affirm the district court's order of dismissal. In reviewing an order of dismissal for failure to state a claim, we are not limited to the reasoning given by the district court,

but may affirm the dismissal on any ground that finds support in the record. *Jewel Cos., Inc. v. Pay Less Drug Stores Northwest, Inc.,* 741 F.2d 1555, 1564–65 (9th Cir.1984). Because the FRA has abandoned its position that its discretionary enforcement authority allows it to decline to pursue a particular type of statutory violation, and has declared itself willing to adopt and enforce the courts' interpretation of the HSA, there is no longer any dispute regarding enforcement and thus no case or controversy on that point. Accordingly, we affirm the order of dismissal as to the claims for injunctive relief and mandamus on the ground that subsequent events have rendered them moot.

### III .

As to the UTU's claim for declaratory relief, the FRA argued in its brief on appeal that we were precluded from reaching the merits of that claim because the district court had not done so. We need not address that argument here. Because the district court in *BLE* did reach the merits of the BLE's identical claim for declaratory relief, the identical question is before us. We now decide whether time spent by railroad workers awaiting the arrival of deadhead transportation from duty to their point of final release constitutes "time on duty" under the HSA. We affirm Judge Marsh's lucid and well-reasoned opinion in its entirety.

In determining whether the interpretation adopted by the FRA is the proper one, we first consider "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). On the other hand, "if the statute is silent or ambiguous with respect to the specific issue," the court must consider whether the agency's interpretation is a reasonable one. *Id.* at 843, 104 S.Ct. at 2781. The BLE argues that

inclusion of waiting time in the calculation of an employee's time on duty is mandated by the plain language of several different provisions of the statute. We find none of those provisions to be sufficiently specific and unambiguous to preclude further inquiry.

The BLE relies principally on the language of section 61(b)(3), which provides that "time on duty" terminates "when the employee is finally released from duty." 45 U.S.C. § 61(b)(3). It argues that an employee is not "finally released from duty" within the meaning of the statute until he reaches a designated terminal. Nowhere does the statute define the phrase "finally released from duty", however. Alternatively, the BLE points to section 61(b)(3)(A), under which "[i]nterim periods available for rest at other than a designated terminal" are considered time on duty. *Id.* § 61(b)(3)(A). Because the HSA does not state whether waiting time is time "available for rest", this argument is equally unavailing. Finally, the BLE contends that section 62(b) plainly and unambiguously disposes of the question before us. Under that section, "time on duty" includes, "in addition to the time such employee is actually engaged in or connected with the movement of any train, all time on duty in other service performed for the railroad...." *Id.* § 62(b). Again, this argument begs the question whether employees who must wait on a stopped train for the arrival of deadhead transportation bearing their relief crews are performing any service for the railroad, a question on which the statute is silent.

█ Because we conclude that the language of the HSA does not on its face definitively answer the question regarding the proper characterization of waiting time, we next consider whether the FRA's interpretation "is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781. If so, we are required to defer to the interpretation advanced by the agency charged with administering the statute. *Id.* at 844, 104 S.Ct. at 2782. The FRA contends, not surprisingly, that its interpretation " 'repre-

sents a reasonable accommodation of conflicting policies that were committed to [its] care by the statute.'" *Id.* at 845, 104 S.Ct. at 2783 (quoting *United States v. Shimer,* 367 U.S. 374, 383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)). We disagree. The FRA's interpretation is at odds with an unbroken line of decisions by the Supreme Court and by this circuit that waiting time is time on duty under the HSA, and nothing in the 1969 amendments or in their legislative history contains any indication that Congress intended to change that longstanding rule. In fact, every indication is to the contrary.

Prior to the enactment of the 1969 amendments, the agency charged with interpreting the HSA (first the Interstate Commerce Commission and then the FRA) consistently construed the phrase "time on duty" to include time spent by railroad employees waiting on stopped trains for the arrival of relief crews or spare parts, on the ground that those employees remained subject to orders issued by the railroad and were not free to leave their posts. The government exercised its statutory power to enforce this interpretation of the HSA on numerous occasions, and courts that adjudicated those enforcement actions uniformly agreed with the government's assessment. *See, e.g., Atchison, T. & S.F. Ry. v. United States,* 244 U.S. 336, 37 S.Ct. 635, 61 L.Ed. 1175 (1917); *Missouri, Kansas & Texas Ry. v. United States,* 231 U.S. 112, 34 S.Ct. 26, 58 L.Ed. 144 (1913); *United States v. Southern Pac. Co.,* 245 F. 722 (9th Cir.1917); *Northern Pac. Ry. v. United States,* 220 F. 108 (9th Cir.1915); *San Pedro, L.A. & S.L.R. Co. v. United States,* 213 F. 326 (8th Cir.1914); *United States v. Pennsylvania R.R.,* 275 F.Supp. 345 (W.D.Pa.1967); *United States v. Chicago, M. & P.S. Ry.,* 195 F. 783 (W.D.Wash.1912).

In construing the HSA to include waiting time in the definition of "time on duty", the Court was influenced by the fact that "the act is remedial and in the public interest, and should be construed in light of its humane purpose." *Atchison, T. & S.F. Ry.,* 244 U.S. at 343, 37 S.Ct. at 637. That purpose, as Congress made clear when it enacted the HSA in 1907, was the preven-

tion of casualties that would inevitably result from entrusting the operation of dangerous railroad equipment to fatigued workers. *Id.* Because employees who must wait on a stopped train for the arrival of a relief crew, or for spare parts or equipment remain solely responsible for the train and any passengers or freight until they are relieved of that responsibility by replacement workers, the Court did not hesitate to classify waiting time as time on duty under the HSA. In Justice Holmes's succinct formulation, such employees are "under orders, liable to be called upon at any moment, and not at liberty to go away. They [a]re none the less on duty when inactive. Their duty [i]s to stand and wait." *Missouri, Kansas & Texas Ry.,* 231 U.S. at 119, 34 S.Ct. at 27 (citing *United States v. Chicago, M. & P.S. Ry. Co.,* 197 F. 624, 628 (E.D.Wash.1912), and *United States v. Denver & R.G.R. Co.,* 197 F. 629 (D.N.M.1912)).

Without exception, the lower federal courts followed the Court's lead in holding that waiting time must be included in the calculation of an employee's time on duty in order to effectuate the purpose of the HSA. The basic principle underlying those decisions was that as long as a train crew "remained the crew of the train", whether or not "temporarily relieved", the crew members were not free to rest in the sense required by the statute. *Northern Pac. Ry.,* 220 F. at 110. Accordingly, waiting time could not be considered time off duty. "'The public is interested in actual rest, not in opportunities for rest.'" *United States v. Southern Pac. Co.,* 245 F. 722, 726 (9th Cir.1917) (quoting *United States v. Minneapolis & St. L.R. Co.,* 236 F. 414 (S.D.Iowa 1916)). By contrast, time spent deadheading from a duty assignment was considered time off duty precisely because the deadheading employees had turned the train over to the relief crew and no longer bore any responsibility for the movement or safety of the train. *See, e.g., United States v. Great Northern Ry.,* 285 F. 152 (9th Cir.1922).

At the time of the 1969 amendments to the HSA, it was clear that time spent wait-

ing for the arrival of deadhead transportation bearing a relief crew was "time on duty" under the statute. The FRA had recently obtained an explicit ruling to that effect in *Pennsylvania R.R.*, 275 F.Supp. at 349 ("[T]he crew on Extra 2230 East, although inactive, was compelled to wait for the arrival of the relief crew. Until relieved of their responsibility, they were on duty."), and the railroads had not appealed the decision. The FRA concedes that *Pennsylvania R.R.* correctly sets forth the law regarding waiting time as it existed prior to the 1969 amendments. However, it contends that as a result of the 1969 amendments, waiting time, like time spent deadheading from a duty assignment, became "limbo time"—neither time on duty nor time off duty. 45 U.S.C. § 61(b)(3)(C). Accordingly, the question that we must consider is whether Congress, when it enacted the 1969 amendments to the HSA in order to change the established practice of classifying deadhead time as time off duty, also intended to change the established rule regarding the treatment of waiting time. The answer is clear. It did not.

The FRA relies on the language of the proviso regarding the classification of deadhead time incurred by an employee at the end of a duty assignment: *"Provided,* That time spent in deadhead transportation by an employee from duty to his point of final release shall not be counted in computing time off duty." 45 U.S.C. § 61(b)(3)(C). According to the FRA, "time spent in deadhead transportation" includes time spent waiting for the arrival of such transportation. However, in light of the accepted industry-wide understanding of the term "deadhead transportation" at the time the 1969 amendments were adopted, the proviso plainly does not encompass waiting time:

> Deadheading may be defined as travel performed by railroad employees at the direction of a railroad.... A crew that has reached the maximum limit under the hours-of-service law and cannot work any longer may be relieved of its duties and directed to deadhead back to the home terminal....

The first thing to note is that the employees are riding as passengers in the most suitable means of transportation available. They are not working.

H.R.Rep. No. 20, 91st Cong., 1st Sess. 134 (1969). In other words, deadheading employees are traveling to or from a duty assignment *as passengers* on a train or other vehicle operated by *other* railroad employees. Waiting employees, by contrast, are not passengers of the train on which they are required to wait, but rather must function as "the crew of the train", *Northern Pac. Ry.*, 220 F. at 110, until relief arrives. Accordingly, they are not "in deadhead transportation" within the meaning of section 61(b)(3)(C).

The legislative history suggests no contrary intention. Rather, that history focuses exclusively on the safety problems that had arisen because deadhead time and certain designated "rest periods" were treated as time *off* duty for purposes of the HSA even though employees were unable to secure uninterrupted rest during those periods. S.Rep. No. 604, 91st Cong., 1st Sess. 4 (1969), *reprinted in* 1969 U.S.C.C.A.N. 1636, 1639; H.Rep. No. 20, 91st Cong., 1st Sess. 29–30 (1969). It appears, therefore, that Congress was concerned not with narrowing the accepted understanding of "time *on* duty", but with placing restrictions on the definition of "time *off* duty". As a result of the amendments, deadhead time, formerly classified as time off duty, was reclassified partly as time on duty and partly as "limbo time", in each case strengthening rather than weakening the protections afforded railroad employees. Similarly, interim rest periods of less than four hours, also formerly considered to be time off duty, were reclassified as time on duty. In connection with the new restrictions on what sorts of time could permissibly be treated as "time off duty", Congress noted the official position of the FRA that a railroad employee " 'remains on duty until *relieved of all responsibilities and is free to go and do as he pleases.'* " *Hours of Service Act Amendments of 1969: Hearings before the House Comm. on Interstate and Foreign Commerce,* 91st

Cong., 1st Sess. 35 (1969) (quoting memorandum of the Federal Railroad Administration Bureau of Railroad Safety) (emphasis added). As discussed above, the parties agree that employees who must wait on a stopped train for the arrival of deadhead transportation bearing a relief crew retain certain contingent responsibilities and are not free to go and do as they please.

Nowhere in the legislative history is it suggested that Congress intended to convert time previously considered time *on* duty to time *off* duty, or to weaken the protections afforded the employees and the safety interests that underlie the HSA. Every indication is that the purpose of the amendments was precisely the opposite—to strengthen those rights and interests. In the absence of any statutory language to the contrary, we are compelled to conclude that Congress did not intend the amendments to affect the longstanding "remedial" practice of including waiting time in the calculation of railroad employees' time on duty.

The FRA contends that recognition of waiting time as time on duty will encourage railroads to violate the HSA. Rather than allowing a crew to stop the train and wait after it has worked twelve hours, the FRA predicts, railroads will require the crew to continue working past the twelve-hour cutoff in order to bring the train into a terminal. The unions respond that any such reaction would constitute a wilful violation of the statute and that the FRA is capable of adjusting its enforcement practices to deal with it. The unions also contend that the railroads will be able to accommodate themselves to our decision very simply by increasing the efficiency of their performance. We need not resolve this disagreement. We cannot avoid the statutory command, in light of its well established meaning for many years, on the basis of an argument—meritorious or non-meritorious—that the policy of the statute is unwise. We and the FRA must apply the law as Congress has adopted it, without subjecting the statutory command to our

own independent policy judgment regarding what practice might best serve the interests of railway safety.

In conclusion, we note once again that waiting time has been considered time on duty throughout the eighty-five year history of the HSA. The FRA's position that this understanding was changed by the 1969 proviso regarding deadhead time finds no support in the statutory language, in the legislative history of the 1969 amendments, or in the policies underlying the statute, and is contrary to reason. Accordingly, we reject it.

The judgment of the district court for the District of Oregon in Nos. 91–35911 and 91–36061 is AFFIRMED.

The judgment of the district court for the Northern District of California in No. 90–16741 is AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.