**The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Burlington Northern Railroad Company, Consolidated Rail Corporation, CSX Transportation, Inc., Illinois Central Railroad**

**Company, Norfolk Southern Railway Company, Norfolk & Western Railway Company, Southern Pacific Transportation Company, and Union Pacific Railroad Company, Petitioners,**

v.

**Federico PENA, Secretary of Transportation, et al., Respondents,**

and

**Brotherhood of Locomotive Engineers, and United Transportation Union, Intervening Respondents.**

**Nos. 93–1505, 93–2378, and 93–2712.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1994.

Decided July 13, 1994.

Order Granting Suggestion for Rehearing En Banc and Vacating Opinion Aug. 30, 1994.

---

Thomas J. Knapp, Lawrence M. Stroik, W. Douglas Werner, Fort Worth, TX, Ronald M. Johnson (argued), Mark V. Holden, Akin, Gump, Strauss, Hauer & Feld, Washington, DC, Guy Vitello, Schaumburg, IL, for Atchison, Topeka and Santa Fe Ry. Co.

Thomas J. Knapp, Lawrence M. Stroik, W. Douglas Werner, Fort Worth, TX, Ronald M. Johnson, Mark V. Holden, Akin, Gump, Strauss, Hauer & Feld, Washington, DC, for Burlington Northern R. Co., Southern Pacific Transp. Co.

Thomas J. Knapp, Lawrence M. Stroik, W. Douglas Werner, Fort Worth, TX, Ronald M. Johnson, Mark V. Holden, Akin, Gump, Strauss, Hauer & Feld, Washington, DC, John B. Rossi, Jr., Andrew P. Cocoran, Consolidated Rail Corp., Philadelphia, PA, for Consolidated Rail Corp.

Thomas J. Knapp, Lawrence M. Stroik, W. Douglas Werner, Fort Worth, TX, Ronald M. Johnson, Mark V. Holden, Akin, Gump, Strauss, Hauer & Feld, Washington, DC, James D. Tomola, CSX Transp., Inc., Jacksonville, FL, for CSX Transp., Inc.

Thomas J. Knapp, Lawrence M. Stroik, W. Douglas Werner, Fort Worth, TX, Ronald M. Johnson, Mark V. Holden, Akin, Gump, Strauss, Hauer & Feld, Washington, DC, Ronald A. Lane, Illinois Cent. R. Co., Chicago, IL, for Illinois Cent. R. Co.

Thomas J. Knapp, Lawrence M. Stroik, W. Douglas Werner, Fort Worth, TX, Ronald M. Johnson, Mark V. Holden, Akin, Gump, Strauss, Hauer & Feld, Washington, DC, William P. Stallsmith, Jr., Norfolk Southern Corp., Norfolk, VA, for Norfolk Southern R. Co., and Norfolk & Western R. Co.

Thomas J. Knapp, Lawrence M. Stroik, W. Douglas Werner, Fort Worth, TX, Ronald M. Johnson, Mark V. Holden, Akin, Gump, Strauss, Hauer & Feld, Washington, DC, Brenda J. Council, Union Pacific R. Co., Omaha, NE, for Union Pacific R. Co.

John F. Daly (argued), Malcolm L. Stewart, Dept. of Justice, Civ. Div., Appellate Section, Rosalind A. Knapp, Dept. of Transp., Washington, DC, for Federico Rena.

S. Mark Lindsey, pro se.

John F. Daly, Malcolm L. Stewart, S. Mark Lindsey, David Herbert Kasminoff, Daniel C. Smith, Billie Ann Stultz, Federal R.R. Admin., Office of the Chief Counsel, Washington, DC, for Federal R.R. Admin.

Lawrence M. Mann, Alper & Mann, Washington, DC, for Brotherhood of Locomotive Engineers, United Transp. Union.

Janet Reno, U.S. Atty. Gen., John F. Daly (argued), Malcolm L. Stewart, Dept. of Justice, Civ. Div., Appellate Section, Rosalind A. Knapp, Dept. of Transp., David Herbert Kasminoff, Daniel C. Smith, Billie Ann Stultz, Federal R.R. Admin., Office of the Chief Counsel, Lawrence M. Mann, Steven M. Weisbaum, Alper & Mann, Washington, DC, for National Transp. Safety Bd., Grady C. Cothen, Federal R.R. Admin.

Before BAUER and MANION, Circuit Judges, and GILBERT, Chief District Judge.*

GILBERT, Chief District Judge.

The petitioners bring this petition for review of orders of the Federal Railroad Ad-

---

* Judge J. Phil Gilbert, Chief District Judge from the Southern District of Illinois, is sitting by designation.

ministration (the "FRA") changing its interpretation of the Hours of Service Act, 45 U.S.C. §§ 61–64 (the "HSA" or the "Act"), to provide that time spent waiting by a train crew, which has been relieved from all train operating duties, for transportation back to its point of release is now "on duty" time to be counted toward the maximum 12 consecutive hours on duty allowed by the HSA. For the reasons given below, we grant the petition and affirm the agency's decision.

As a preliminary matter, we must determine whether we have jurisdiction over this matter. Pursuant to 28 U.S.C. § 2342(7) the court of appeals (other than the U.S. Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of, among others, all final agency actions described in section 202(f) of the Federal Railroad Safety Act of 1970 [45 U.S.C. § 431(f)]. The Federal Railroad Safety Act provides that "The Secretary of Transportation ... shall (1) prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety...." 45 U.S.C. § 431(a). The Secretary of Transportation is charged with administration of the Hours of Service Act. 49 U.S.C.App. § 1655(e)(2). The Secretary has delegated this function to the FRA, a federal agency within the Department of Transportation. The Federal Railroad Safety Act also provides:

> Any final agency action taken by the Secretary under this subchapter or under any of the other Federal railroad safety laws, ... is subject to judicial review as provided in chapter 7 of Title 5. Except as provided in section 432(e) of this title, any proceeding to review such final agency action shall be brought in the appropriate court of appeals as provided by and in the manner prescribed in chapter 158 of Title 28.

45 U.S.C. § 431(f). Accordingly, we find that we do have jurisdiction to consider this petition.

## I. Background

The HSA regulates the maximum hours of service that a train crew can be continuously on duty. The Act currently allows railroads to operate crews up to a maximum of 12 consecutive hours. The HSA also imposes mandatory rest periods before employees involved in train operation can be recalled to work. An employee who has been continuously on duty for the maximum 12 hours cannot go on duty again until he or she has had at least 10 consecutive hours off duty. In addition, an employee cannot return to duty unless he or she has had at least 8 consecutive hours off duty during the preceding 24 hours.

When a train crew cannot reach its destination within the maximum 12 hour period, the railroad must order the crew to "park" the train and await transportation back to the crew's designated terminal release point. When the crew reaches this maximum 12 hour limit it is said to be an "expired" or "outlawed" crew. The time spent in "deadhead" transportation to its designated release point is "limbo" time, because it is not on-duty time for purposes of the 12 hour maximum, nor is it off-duty for purposes of the mandatory rest periods. This limbo time is specifically excluded from time off duty in the statutory language, just as deadhead transportation *to* the crew's beginning point *is* on duty time. The question is, what about time spent waiting for the deadhead transportation back to the point of release?

The FRA had previously interpreted the 1969 amendment to the HSA, which cut the maximum hours from 16 to 12 and added the language about deadhead transportation, to mean that time spent by an "outlawed" or "expired" crew waiting for deadhead transportation to its designated release terminal was *not considered on-duty time.* The FRA treated this waiting time as part of the transportation and therefore limbo time.

The Ninth Circuit Court of Appeals rejected the FRA's interpretation in *United Transportation Union v. Skinner,* 975 F.2d 1421 (9th Cir.1992). The Ninth Circuit held that such time spent waiting for deadhead transportation must be counted as *time on duty* for purposes of the 12 hour maximum.

The Ninth Circuit said, "based on the language of the HSA and on its consistent interpretation by the courts throughout its 85-year history, we conclude that such waiting time is and always has been time on duty for purposes of the statute." *Id.* at 1422.[1] The FRA then decided to adopt this interpretation of the HSA nationwide, even though the FRA had opposed the interpretation in the Ninth Circuit. It is this decision of the FRA that the petitioners challenge.

## II. Analysis

### A. Standard

■ When we review an agency interpretation we must follow the two-step analysis mandated in *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984): (1) first, the court must consider whether Congress has spoken directly to the identical question at issue, for the court, as well as the agency must give effect to the unambiguously expressed intent of Congress; (2) if the statute is silent or ambiguous with respect to the specific issue the court must consider whether the agency's interpretation is a reasonable one.

### B. Discussion

■ The HSA defines time "on duty" as follows:

Time on duty shall commence when an employee reports for duty and terminate when the employee is finally released from duty, and shall include:

(A) Interim periods available for rest at other than a designated terminal;

(B) Interim periods available for less than four hours rest at a designated terminal;

(C) Time spent in deadhead transportation by an employee to a duty assignment: *Provided,* that time spent in deadhead transportation by an employee from duty to his point of final release shall not be counted in computing time off duty;

(D) The time an employee is actually engaged in or connected with the movement of any train; and

(E) Such period of time as is otherwise provided by this chapter.

45 U.S.C. § 61(b)(3).

In determining whether the interpretation adopted by the FRA is the proper one, we first consider "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* at 842–43, 104 S.Ct. at 2781–82. On the other hand, "if the statute is silent or ambiguous with respect to the specific issue," the court must consider whether the agency's interpretation is a reasonable one. *Id.* at 843, 104 S.Ct. at 2782.

The statute is clearly "silent or ambiguous" with respect to the question of whether time waiting for deadhead transportation is on-duty time, limbo time, or off-duty time. So we must consider whether the agency's interpretation is "a reasonable one." In order to make that determination we must consider whether the agency's interpretation "is based on a permissible construction of the statute." *Id.* If the answer is yes, then the Court must defer to the interpretation advanced by the agency charged with administering the statute. *Id.* We would have to reject any administrative construction which is contrary to clear congressional intent. We are not, however, required to agree completely with the construction put forward by the agency. *Chevron* tells us that we do not have to find the agency's interpretation is the only one it could have adopted, nor does it have to be the interpretation we would have reached if the question initially arose in a judicial proceeding. *Id.* at 843, n. 11, 104 S.Ct. at 2782, n. 11. Had this question come before us originally we would have been inclined to draw a bright line at a different point in time, that is, at the time the relief crew took over operation of the train and the "expired" crew was therefore relieved of all operating duties. But that interpretation is not the one reached by the Ninth Circuit and not the one adopted by the FRA.

---

1. There has been only one prior reported decision holding that time waiting for deadhead transportation is on duty time. *United States v.* *Pennsylvania RR Co.,* 275 F.Supp. 345 (W.D.Pa. 1967).

Because we conclude that the language of the HSA does not definitively answer the question regarding the proper characterization of waiting time, we next consider whether the FRA's interpretation "is based on a permissible construction of the statute." *Id.* If so, we are required to defer to the interpretation advanced by the agency charged with administering the statute. *Id.* at 844, 104 S.Ct. at 2782.

We find that the interpretation advanced by the FRA, in reliance on the Ninth Circuit opinion, is reasonable and based upon a permissible construction of the HSA. Indeed, we would be hard pressed to say that an agency's reliance upon the opinion of a Circuit Court of Appeals is unreasonable.

### III. Conclusion

In accordance with the foregoing, we affirm the Federal Railroad Administration's order interpreting the Hours of Service Act to provide that time spent waiting by a train crew for transportation to its point of release is "on duty" time to be counted toward the maximum 12 consecutive hours on duty allowed by the Hours of Service Act.

BAUER, Circuit Judge, dissenting:

I respectfully dissent. I do not believe the agency's interpretation of the statute is reasonable. "The purpose of the Act is to promote safety in operating trains by preventing the excessive mental and physical strain which usually results from remaining too long at an exacting task." *Chicago & A.R. Co. v. United States,* 247 U.S. 197, 199, 38 S.Ct. 442, 443, 62 L.Ed. 1066 (1918). The majority's interpretation of the Act impedes the efficiency of railroads and does nothing to advance the purpose of the Act.

Evidence was presented at the congressional hearings regarding the 1969 amendments to the Act that time spent waiting for deadhead transportation was not on-duty time. Further, the Senate Report of the amendments states that on-duty time was "time spent actually engaged in or connected to the movement of a train." S.Rep. No. 91–604, 91st Cong., 1st Sess. 8 (1969) U.S. Code Cong. & Admin.News 1969, pp. 1636, 1640. This comports with the purpose of the act; the hazards of train operation occur when the train is moving.

Two specific aspects of the 1969 amendments to the Act serve to illuminate this determination. Time spent by an employee in deadhead transportation to begin a shift was categorized as time on-duty because this time could not be spent resting and thereby impacted the employee's physical and mental condition when operating a train at the end of a shift. Time spent by an employee in deadhead transportation after a shift, however, was categorized as limbo time because it neither affected the employee's ability to operate a train nor provided an opportunity for adequate rest. Time spent waiting for deadhead transportation is analogous to the latter and should be considered limbo time.

The majority affirms the FRA's interpretation solely on the basis of its reliance on the Ninth Circuit's opinion in *United Transp. Union v. Skinner,* 975 F.2d 1421 (9th Cir. 1992). But I believe *Skinner* is based on a faulty premise: that railroad crews waiting for deadhead transportation might be expected to perform additional duties to further the completion of their assigned train's run. The cases cited by *Skinner,* 975 F.2d at 1426, address the categorization of time spent by a railroad crew waiting for repairs to be made or for some other delay before resuming its duties of operating the train; these cases held that the crews were on duty during the time they spent waiting. That reasoning makes sense considering the Act's goal of ensuring safety in the course of operating trains.

Outlawed crews waiting for deadhead transportation, however, have no further duties connected with *operating* the train. To the extent the outlawed crew remains on the train while it waits, it may be responsible for ensuring that the train is not looted or otherwise vandalized. But an outlawed crew is precluded from operating the train, technically by the statute and practically by the railroad. It is not unusual, though, for the outlawed crew to depart the train to wait nearby for deadhead transportation after a relief crew has arrived and assumed control of the train in order to bring the train to its destination. The interpretation of the Act by the majority, following *Skinner,* would include as on-duty time that time an outlawed crew spends in a saloon waiting for deadhead transportation, an activity that hardly contributes to the "excessive mental and physical strain" while engaged in or connected to

329

the movement of a train. This interpretation is considerably removed from the statutory goal of safety in operating trains and is, in my opinion, unreasonable in light of the letter and spirit of the Act.

POSNER, Chief Judge, BAUER, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, KANNE, and ROYNER, Circuit Judges.

### ORDER *

Aug. 30, 1994

On consideration of the suggestion for rehearing *en banc* filed by the petitioners and the responses thereto, a majority of the judges in regular active service voted to GRANT a rehearing *en banc*. Accordingly, it is ordered that the suggestion for rehearing *en banc* is granted. It is further ordered that the judgment and opinion entered in this case on July 13, 1994 be vacated. This case will be reheard *en banc* at the convenience of the court.

* The Honorable Walter J. Cummings did not participate in the consideration or decision of this petition for rehearing *en banc*.